**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**



DOCKETED

APR 1 9 2001

| | |
|---|---|
| The DBT GROUP, INC., an<br>Illinois corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FMC CORPORATION, a Delaware corporation,<br>and ELECTRONIC DATA SYSTEMS<br>CORPORATION, a Delaware corporation,<br><br>    Defendants. | ) JUDGE KOCORAS<br>)<br>) No.<br>) <br>) 01C 2769<br>) MAGISTRATE JUDGE NOLAN<br>)<br>)<br>)<br>)<br>) |



**VERIFIED**
**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff, The DBT Group, Inc. ("DBT"), an Illinois corporation, brings the following

Complaint against Defendants FMC Corporation ("FMC"), a Delaware corporation, and

Electronic Data Systems Corporation ("EDS"), a Delaware corporation:

### INTRODUCTORY PARAGRAPHS

### The Parties

1.    Plaintiff DBT, an Illinois corporation with its principal place of business in

Chicago, Illinois, is in the business of developing computer programs for use on large-scale,

main-frame, computers.

2.    Defendant FMC, a Delaware corporation with its principal place of business in

Chicago, Illinois, is in the business of manufacturing machinery and equipment.

3.    Defendant EDS, a Delaware corporation with its principal place of business in Plano, Texas, is engaged in business as providing information collection, management systems, and consulting services.

4.    This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the Copyright Act of 1976, 17 U.S.C. § 501 ("the Copyright Law"), and 28 U.S.C. §§ 1331 and 1338(a).

5.    Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a), because Defendant FMC and not the Defendant EDS is found in and otherwise resides in the Northern District of Illinois.

6.    DBT has made, and continues to make, a substantial investment of time, effort and expense in the design, development, testing, manufacturing, and marketing of various computer software products, including COMPRESS for DB2 and COMPRESS for IMS software, and user instructions, reference manuals and other associated documents relative to such software products (hereinafter referred to collectively as the "DBT Software Products").

7.    The DBT Software Products contain wholly original materials constituting copyrightable subject matter under the Copyright Law.

8.    DBT has published and licensed the DBT Software Products in interstate commerce.

9.    DBT's copyright registrations for the DBT Software Products are attached hereto as Exhibit A.

10.    DBT markets, distributes and sells licenses to use copies of the DBT Software Products to discourage the unauthorized duplication, distribution and sale of same.

11.    A licensee of the DBT Software Products typically obtains from DBT a license wherein DBT authorizes the licensee to use the DBT Software Products on behalf of the licensee at the licensee's facilities commonly referred to as an "installation site."

12.    In an effort to discourage the unauthorized duplication of the DBT Software Products, DBT has clearly marked the printed and machine-readable copies of its products with various combinations of the following text:  "All Rights Reserved.  Copyright 1979-(current date) The DBT Group, Inc.  A proprietary product.  Usage according to the terms of the applicable license agreement/evaluation agreement.  This notice does not imply publication." Since September of 2000, DBT has marked its invoices with the following text:  "You are licensed to run (product name) on (quantity) CPUs."  However, it is possible for unlicensed copies of such software to be made from licensed copies of such software without DBT's knowledge or authorization.  It is also possible for unlicensed copies of DBT'S software to be obtained through unauthorized and illegitimate distribution channels, for persons or entities which had been licensed users of the DBT Software Products to continue to use such products after their license has expired, and for licensed users to furnish the DBT Software Products to other facilities and users which are not authorized by DBT.

## COUNT I

### FMC
### Copyright Infringement

13.     Plaintiff DBT restates and realleges the allegations set forth in Introductory

Paragraphs 1 through 12 as Paragraph 13 of this Count I.

14.     In 1987, Plaintiff DBT and Defendant FMC entered into the Master

Limited Software License Agreement ("MLSLA"), attached hereto as Exhibit B, which states in

Section 3.3, as follows: "With the prior written consent of DBT, which shall not be unreasonably

withheld, Licensee may replace the Designated Installation Site with a substitute Designated

Installation Site."

15.     On April 27, 1995, FMC requested DBT to consent to FMC's outsourcing of its

data processing services to SHL Systemhouse Corp., a division of MCI WorldCom corporation

("SHL"), serving as FMC's Designated Installation Site and furnished SHL with the DBT

Software Products which DBT had licensed to FMC pursuant to the MLSLA.  DBT granted

written consent to FMC for SHL to serve as FMC's Designated Installation Site pursuant to

Paragraph 3.3 of the MLSLA.

16.     On or about April 22, 1999, an entity known as EDS purchased SHL's assets from

MCI WorldCom and obtained possession of the DBT Software Products from either FMC or

SHL.  FMC has not requested DBT to consent to EDS's use of the DBT Software Products which

DBT licensed to FMC and DBT has not consented to, authorized, or licensed such use.

17.     FMC authorized and directed EDS to use the DBT Software Products which DBT

had licensed to FMC pursuant to the MLSLA, and EDS has had possession of and used the DBT

Software Products for FMC's and EDS's mutual benefit without DBT's license, authorization or consent.

18.    FMC's distribution of the DBT Software Products to EDS and/or use of the DBT Software Products through EDS without DBT's license, authorization or consent is in breach of the MLSLA and infringes DBT's copyrights in the DBT Software Products in violation of the Copyright Act, 17 U.S.C. § 501.

19.    Defendant FMC's aforesaid conduct constitutes the willful infringement of DBT'S copyrights in the DBT Software Products within the meaning of 17 U.S.C. § 504(c)(2).

20.    Software piracy is rampant in this country and throughout the world. In 1999, alone, more than one in every three business software applications in use had been pirated and that software publishers lost in excess of $12 billion annually as a result of the unauthorized use of their software.

21.    By reason of the foregoing facts, DBT is entitled to injunctive and monetary relief against Defendant FMC pursuant to 17 U.S.C. §§ 502 through 505.

WHEREFORE, Plaintiff DBT prays this Court grant the following relief against Defendant FMC:

a)    That Defendant FMC, its agents, employees, successors, assigns, and all other persons acting in concert with or affiliated with it, be permanently enjoined and restrained from copying, reproducing, manufacturing, duplicating, disseminating, distributing, operating, maintaining, loading, browsing, executing, or otherwise using any unauthorized copies of the DBT Software Products which are the subject of this Complaint, and the user instructions,

reference manuals and other associated documents relative to such software products, and from otherwise infringing DBT's copyrights in said software products;

b) That Defendant FMC be ordered to file, within 30 days of the issuance of the injunction and/or order of impoundment, a sworn report setting forth in detail the manner in which he has complied with the injunction and order of impoundment;

c) That Defendant FMC be ordered to conduct an accounting of all profits derived from making, using, marketing or selling unlicensed copies of the DBT Software Products which are the subject of this Complaint;

d) That DBT be awarded its actual damages or, in the alternative, its statutory damages for willful infringement in the amount of $150,000 per violation; and

e) That DBT be awarded attorneys' fees, costs, and any further relief the court deems just and proper.

## COUNT II
### EDS
### Copyright Infringement

22.     Plaintiff DBT restates and realleges the allegations in Paragraphs 1 through 21 as Paragraph 22 of this Count II.

23.     On February 29, 2000, DBT sent EDS a letter demanding that it cease infringing DBT's copyrights, but EDS refused DBT's request and has continued to use DBT's software without DBT's license, authorization or consent.

24.     EDS's possession and use of the DBT Software Products without DBT's consent, authorization or license infringes DBT's copyrights in the DBT Software Products in violation of the Copyright Act, 17 U.S.C. § 501.

25.     Defendant EDS's aforesaid conduct constitutes the willful infringement of DBT's copyrights in the DBT Software Products within the meaning of 17 U.S.C. § 504(c)(2).

26.     Software piracy is rampant in this country and throughout the world.  In 1999, alone, more than one in every three business software applications in use had been pirated and that software publishers lost in excess of $12 billion annually as a result of the unauthorized use of their software.

27.     By reason of the foregoing facts, DBT is entitled to injunctive and monetary relief against Defendant EDS pursuant to 17 U.S.C. §§ 502 through 505.

WHEREFORE, Plaintiff DBT prays this Court grant the following relief against Defendant EDS:

a)      That Defendant EDS, its agents, employees, successors, assigns, and all other persons acting in concert with or affiliated with it, be permanently enjoined and restrained from copying, reproducing, manufacturing, duplicating, disseminating, distributing, operating, maintaining, loading, browsing, executing, or otherwise using any unauthorized copies of the DBT Software Products which are the subject of this Complaint, and the user instructions, reference manuals and other associated documents relative to such software products, and from otherwise infringing DBT's copyrights in said software products;

b)      That Defendant EDS be ordered to file, within 30 days of the issuance of the injunction and/or order of impoundment, a sworn report setting forth in detail the manner in which he has complied with the injunction and order of impoundment;

c)      That Defendant EDS be ordered to conduct an accounting of all profits derived from making, using, marketing or selling unlicensed copies of the DBT Software Products which are the subject of this Complaint;

d)      That DBT be awarded its actual damages or, in the alternative, its statutory damages against EDS for willful infringement in the amount of $150,000 per violation; and

e)      That DBT be awarded attorneys' fees, costs, and any further relief the court deems just and proper.

Respectfully submitted,

By: _____
One of Plaintiff's attorneys

William M. Stevens
Micah E. Marcus
Elayna T. Pham
McBride Baker & Coles
500 West Madison Street, Suite 4000
Chicago, Illinois  60661 -- (312) 715-5700

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| The DBT GROUP, INC., an Illinois corporation, | ) ) |
| Plaintiff, | ) No. ) ) |
| v. | ) ) |
| FMC CORPORATION, a Delaware corporation, and ELECTRONIC DATA SYSTEM CORPORATION, a Delaware corporation, | ) ) ) ) |
| Defendants. | ) ) |

## DBT VERIFICATION

The undersigned, Yvette Hirth, certifies under penalties for perjury that the allegations in

Paragraphs 1, 6-12, 14-18, and 23-25 of the foregoing Verified Complaint for Injunctive and

Other Relief are true to the best of her knowledge and belief.

_____
Yvette Hirth

STATE OF _ILLINOIS_ )
)
COUNTY OF _Cook_ )

Subscribed and Sworn to
before me on this the _18_ day
of _APRIL_, 2001__.

_____
NOTARY PUBLIC

```
"OFFICIAL SEAL"
Valerie L. Maag
Notary Public, State of Illinois
My Commission Exp.12/10/2001
```

1140293v3                    9

William M. Stevens
Micah E. Marcus
Elayna T. Pham
McBride Baker & Coles
500 W. Madison Street
40th Floor
Chicago, Illinois 60661
312/715-5700

# EXHIBIT  A

# CERTIFICATE OF REGISTRATION



UNITED STATES COPYRIGHT OFFICE
THE LIBRARY OF CONGRESS

OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
*United States of America*



## FORM TX
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE



**TXu 945-864**

EFFECTIVE DATE OF REGISTRATION

JAN 1 2 2001

Month | Day | Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**
DBT/COMPRESS FOR DB2

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.       **Title of Collective Work ▼**

If published in a periodical or serial give:  Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

## 2

**a**

**NAME OF AUTHOR ▼**
The DBT Group, Inc.

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶ Illinois

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☑ No     If the answer to either
Pseudonymous?  ☐ Yes ☑ No     of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire text of computer program; Entire program code

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No     If the answer to either
Pseudonymous?  ☐ Yes ☐ No     of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No     If the answer to either
Pseudonymous?  ☐ Yes ☐ No     of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2000 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶          Day ▶          Year ▶          N/A          ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
The DBT Group, Inc.
29 S. LaSalle St., Ste. 610
Chicago, IL 60603

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JAN 1 2 2001
ONE DEPOSIT RECEIVED
JAN 1 2 2001
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.       • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

**EXHIBIT**

A

# CERTIFICATE OF REGISTRATION



★ UNITED STATES COPYRIGHT OFFICE ★
★ THE LIBRARY OF CONGRESS ★

OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
*United States of America*



**FORM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TXu 945-839**



EFFECTIVE DATE OF REGISTRATION

**DEC 29 2000**
Month          Day          Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
DBT/COMPRESS FOR IMS

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

---

**2**
**a**

NAME OF AUTHOR ▼
The DBT Group, Inc.

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ Illinois

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire text of computer program; Entire program code

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**
**a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given in all cases.
2000  ◀ Year

**b**

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ N/A      Day ▶      Year ▶      ◀ Nation

---

**4**

See instructions before completing this space.

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
The DBT Group, Inc.
29 S. LaSalle St., Ste. 610
Chicago, IL  60603

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

APPLICATION RECEIVED
DEC 29 2000
ONE DEPOSIT RECEIVED
DEC 29 2000
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.        • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

# EXHIBIT B

## MASTER LIMITED SOFTWARE LICENSE AGREEMENT NO. CFMCCORP.AGR

THIS MASTER LIMITED SOFTWARE LICENSE AGREEMENT (this "Agreement") is made and entered into this _____ day of _____, 198___, by and between DATABASE TECHNOLOGY CORPORATION, an Illinois corporation having offices at 21 North Skokie Highway, Lake Bluff, Illinois 60044 ("DBT") and FMC CORPORATION, a Texas corporation having its principal offices at 1460 Round Table, Dallas, Texas 75356 ("Licensee").

1. **Subject of Agreement**

Licensee desires to obtain, and Licensor is willing to grant, a non-exclusive license to use the computer software and related materials identified in one or more Schedules in the form of Exhibit A hereto executed by the parties (each, a "Schedule"). In the event of any inconsistency between the provisions of this Agreement and any Schedule, the provisions of the Schedule shall be controlling.

2. **Definitions**

2.1 "Programs" means the copies of the computer instructions and data identified in a Schedule hereto and all enhancements and modifications thereto subsequently furnished to Licensee by DBT.

2.2 "Documentation" means the copies of the printed materials which explain the functionality and operation of the Programs identified in a Schedule hereto and all enhancements and modifications thereto furnished to Licensee by DBT.

2.3 "Software Assets" as used herein shall mean the Programs and Documentation.

2.4 "Designated Installation Site" means, as to any Schedule, the installation site therein identified or a replacement thereof made pursuant to Section 3.3 below.

2.5 "Commencement Date", as to any schedule, means the date which is 10 days after the date of Licensee's execution of the Schedule, or if later, the date which is 5 days after Licensee's receipt of the Program Asset.

3. **Grant of License**

3.1 As to any Schedule, DBT hereby grants to Licensee a non-exclusive and non-transferable license to use the Software Assets therein identified, subject to the provisions of this Agreement and solely: (a) in binary object code format; (b) for Licensee's internal business purposes; (c) within the United States; and (d) at the designated Installation Site(s). Licensee acknowledges that DBT retains all rights to the Software Assets not expressly granted under this Agreement, including, without limitation, ownership thereof.

3.2 As to any Schedule in which the license granted hereunder is designated as a Per CPU License, the Software Assets may be used solely on the Designated CPU identified in the Schedule, provided that : (a) Licensee may temporarily execute the Programs on a substitute CPU located at the Designated Installation Site if the Designated CPU malfunctions; and (b) Licensee may relocate use of the Software Assets to a replacement Designated CPU upon prior written notice to DBT thereof so long as the Software Assets are erased from the original Designated CPU.

3.3 With the prior written consent of DBT, which shall not be unreasonably withheld, Licensee may replace the Designated Installation Site with a substitute Designated Installation Site.

3.4 The rights herein granted above may be exercised by Licensee's employees solely in furtherance of Licensee's business purposes, subject to Section 9 below. The Programs shall not be made available on a "for hire" basis such as in connection with the operation of a service bureau or time-sharing business.

4. **Term**

4.1 This Agreement shall become effective upon execution of this Agreement by both parties and shall continue in effect until all Schedules entered into hereunder have been terminated or have expired.

4.2 As to any Schedule in which the license is designated as "Long Term," the license of the Software Assets therein identified shall have a term commencing on the Commencement Date thereof and continuing for twenty (20) years.

4.3 As to any Schedule in which the license is designated as "Lease" or "Rental," the license of the Software Assets therein identified shall have a term commencing on the Commencement Date thereof and continuing for the Initial Term identified in the Schedule, which Initial Term shall, if the Commencement Date falls on other than the first day of a month, be measured from the first day of the next succeeding month.

4.4 So long as Licensee is not in default hereunder, any license designated Lease or Rental may be renewed by Licensee for one or more successive renewal terms of not less than _____ each by written notice thereof given to DBT not less than 30 days prior to expiration of the then current term.

4.5 So long as Licensee is not in default hereunder, any license designated as "Lease" may be converted to a Long Term license, effective as of any quarterly licensee fee payment date, by Licensee by written notice thereof given to DBT not less than 30 days before such date and payment by such date of (a) DBT's then current Long Term license fees for the Software Assets being so converted minus (b) 55% of the Lease license fees theretofore paid by Licensee for such Software Assets.

5. **Delivery; Installation; Training**

5.1 DBT shall deliver the Software Assets identified in any schedule to Licensee promptly after receipt by DBT of executed counterparts of the Schedule accompanied by the payment required by Section 6 below. DBT shall not be liable for any damages or penalty for delay in delivery due to causes beyond the reasonable control of DBT.

5.2 The Programs shall be installed by Licensee. DBT shall provide Licensee with a reasonable level of telephone support to answer inquiries Licensee may have concerning the installation of the Programs.

Acceptance Initials of Licensee: _____        Acceptance Initials of DBT: _____

COPY



**EXHIBIT**

B

2

If Licensee requires any additional installation assistance or any training or consulting services, DBT may elect to provide such services at its then current rates and upon DBT's standard terms for providing such services.

6. Maintenance

6.1   DBT shall provide Licensee with "Maintenance," as defined below, without charge for Rental and Lease licenses, and for Long Term licenses, without charge for an initial Maintenance term of one (1) year commencing upon the Commencement Date (or if the Commencement Date is other than the first day of a month, from the first day of the next succeeding month).   Upon conversion of a Lease license to a Long Term license, there shall also be no charge for Maintenance for the year following the conversion date.   As to Long Term licenses, Maintenance coverage shall be automatically renewed for successive, nonterminable one (1) year Maintenance Renewal Terms, at DBT's then current charges, unless either party gives to the other, not less than thirty (30) days prior to commencement of the next Maintenance Renewal Term, written notification of such party's election not to renew Maintenance coverage. Maintenance coverage applicable to additional Program copies licensed subsequent to the date of the initial Schedule therefor shall be coterminous with then existing Maintenance coverage, and the initial Maintenance Fees applicable thereto shall be pro rated to reflect the actual coverage period.

6.2   Maintenance shall consist of Corrective Maintenance as described in Section 6.3 below, together with updates and enhancements to the Programs made available by DBT at no additional cost to other licensees of the Software Assets who have entered into a maintenance ʒreement with DBT.   DBT reserves the right to determine what constitutes an enhancement.

6.3   "Corrective Maintenance" shall mean the taking of all reasonable steps to correct instances where the Programs fail to operate as represented in the Documentation (a "Program Error").   When requesting Corrective Maintenance, Licensee shall provide DBT with all information requested by it to identify and/or simulate the observed Program Error symptom and cure the underlying problem.   Within a reasonable time after confirming the existence of a Program Error, DBT shall provide Licensee with revised Program code or an avoidance procedure which shall be implemented by Licensee with reasonable instructions from DBT.

6.4   Corrective Maintenance shall not apply if Program Errors are caused by:  (i) failure to use the Programs in accordance with the instructions set forth in any applicable manuals provided by DBT to Licensee hereunder or in accordance with sound data processing standards;  (ii) alteration or modification of the Programs without the prior written consent of DBT; (iii) use of the Programs in conjunction with software obtained from another source; or (iv) a malfunction of Licensee's hardware for reasons beyond the control the DBT and not as a result of the use of the Programs.   DBT shall be entitled to compensation at its then current rates for any services required to correct Program malfunctions caused by any of the reason set forth under items (i) through (iv) above.

6.5   Licensee shall designate to DBT in writing one representative of Licensee to serve as its Maintenance Contact.   DBT shall accept all Maintenance requests only from such designated person.  Licensee may from time to time change its Maintenance Contact by written notice to DBT.   DBT shall notify Licensee of the name of its Maintenance representative to whom all requests must be directed.

6.6   DBT shall provide all Maintenance from its business premises.   DBT shall not be obligated hereunder or otherwise to render Maintenance at any site at which the Software Assets are being used, and any such on site maintenance provided by DBT shall entitle it to compensation at its then current rates and reimbursement of related travel expenses.

6.7   Maintenance will be provided only for the most recent version of the Software Assets reflecting all then current enhancements, updates and corrections.   If Licensee desires to resume Maintenance coverage after the same has been terminated or suspended, Licensee shall pay DBT a reasonable reinstatement fee to update the Software Assets.

6.8   If a material breach of DBT's Maintenance obligations remains uncured for a period of thirty (30) days after DBT receives written notification thereof, Licensee may cancel Maintenance coverage and receive a refund of any prepaid Maintenance Fee applicable to the cancelled coverage.   This refund shall be the sole and exclusive remedy available to Licensee for such breach.

7. Charges

7.1   Long Term license fees shall be as set forth in the applicable Schedule and shall be payable upon Licensee's execution of the Schedule.

7.2   Initial Term Rental and Lease license fees shall be as set forth in the applicable Schedule.   Such fees shall be payable quarterly in advance, i.e., on the first day of every third month measured from the first day of the month following the Commencement Date (or from the Commencement Date if it falls on the first day of the month).   Upon execution of the Schedule, Licensee shall tender to DBT the first quarterly payment, together with an estimated pro-rated license fee for the period from the Commencement Date of the first day of the next month.   If such estimate is inaccurate, an appropriate adjustment shall be made to the next quarterly payment.

7.3   Maintenance Fees shall be invoiced annually in advance and payable within fifteen (15) days of the invoice date.   If Licensee fails to pay any Maintenance invoice in full within fifteen (15) days after the same is due, DBT shall have the right, in addition to all other rights available to it hereunder and otherwise, to suspend Maintenance coverage until it receives payment of all sums due.

7.4   DBT may increase any Maintenance Fees to its then current rates by giving Licensee not less than ninety (90) days prior written notice to Licensee, any such increase to become effective upon the annual Maintenance renewal date.

Acceptance Initials of Licensee: _____         Acceptance Initials of DBT: _____



3

7.5   Any and all other charges due hereunder shall be due and payable to DBT within fifteen (15) days of Licensee's receipt of an invoice therefor.

7.6   Payments not made when due shall bear interest at the rate of 1-1/2% per month or, if less, the maximum rate permitted by applicable law. Interest so accrued shall be payable upon demand.

7.7   Licensee shall reimburse DBT for all actual and reasonable travel expenses incurred by DBT to provide additional installation, training, or consulting services pursuant to this Agreement.

7.8   Licensee shall pay or, at DBT's option, reimburse DBT for, all shipping related charges and all taxes based on this Agreement, the Software Assets and any services provided by DBT, exclusive, however, of taxes based on the net or gross income or personal property of DBT.

8.   **DBT Warranty, Limitations and Disclaimers of Warranty**

8.1   DBT warrants as to each copy of the Programs Licensed hereunder, that for the one-year period commencing on the Commencement Date thereof (the "Warranty Period") such Programs will operate in all material respects as represented in the Documentation.

8.2   The extent of DBT's liability and Licensee's sole and exclusive remedy under the foregoing warranty shall be limited to performing Maintenance to cause the Programs to operate as warranted above, provided that if after repeated efforts DBT is unable to make the Programs operate as warranted, Licensee shall be entitled to recover actual damages to the limits set forth in Section 8.5 below.

8.3   The foregoing warranty shall not apply and shall be void if the failure of Programs to operate as warranted results from any of the causes set forth in paragraphs (i) through (iv) of Section 6.4. If DBT elects to perform any services required to correct Program malfunctions caused by any of such reasons, it shall be compensated therefor at its then current rates.

8.4   DBT warrants to Licensee that it has the full right to license the Software Assets to Licensee as provided herein. DBT will defend at its expense any action brought against Licensee claiming that the Software Assets used within the scope of the license granted herein infringe a United States copyright, patent or trade secret of any third party, and subject to the provisions of Section 8.5, DBT will pay any costs, damages, and attorneys' fees finally awarded against Licensee in such action, provided that Licensee notifies DBT promptly in writing of the claim and assists DBT, at DBT's expense, as requested in the defense thereof. DBT shall have sole and exclusive control of the defense and/or any settlement of such claim. Should the Software Assets or any part thereof become, or in DBT's opinion, be likely to become the subject of a claim of infringement, DBT may procure for Licensee the right to continue using the same or replace or modify them to make them non-infringing. If none of the foregoing alternatives is reasonably available to DBT, DBT may discontinue the license applicable to the infringing Software Assets and, upon return to DBT of such assets, refund to Licensee(the unamortized portion of the then paid License Fees allocable thereto, determined as to Long Term licenses by amortizing the License Fees evenly over three (3) year period commencing on the Commencement Date. DBT shall additionally refund to Licensee the unamortized portion of any prepaid annual Maintenance Fee) DBT shall have no liability for any infringement based upon Licensee's use of the Software Assets after receipt by Licensee of notice from DBT to discontinue use of the same, or infringement caused by any modification of the Software Assets by Licensee, use of Software Assets with third party software, data, or materials or Licensee's failure to use modifications or enhancements theretofore provided by DBT. The foregoing states the entire liability of DBT with respect to infringement by the Software Assets or any part thereof.

8.5   THE FOREGOING WARRANTIES ARE IN LIEU OF AND DBT HEREBY DISCLAIMS, ANY AND ALL OTHER   WARRANTIES,   EXPRESS   OR   IMPLIED,   INCLUDING   BUT   NOT   LIMITED   TO   IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. DBT DOES NOT WARRANT   THAT   THE   FUNCTIONS   CONTAINED   IN   A   PROGRAM   WILL   MEET   LICENSEE'S REQUIREMENTS OR WILL OPERATE IN THE COMBINATIONS WHICH MAY BE SELECTED FOR USE BY LICENSEE. DBT SHALL NOT BE LIABLE TO LICENSEE OR ANY THIRD PARTY FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR PUNITIVE DAMAGES, PERSONAL INJURY OR LOST PROFITS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING DISCLAIMER, LICENSEE AGREES THAT DBT'S TOTAL LIABILITY ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, SHALL IN NO EVENT EXCEED THE LICENSE FEES PAID BY LICENSEE FOR THE SOFTWARE ASSETS HEREUNDER.

9.   **Ownership, Confidentiality and Protection of Proprietary Information**

9.1   Licensee acknowledges and agrees that all or a part of the Software Assets may be owned by entities other than DBT from whom DBT has been granted a limited license to sublicense the rights granted hereunder ("DBT's Licensor").

9.2   The Software Assets constitute an "unpublished work," as that term is defined in and governed by the U.S. Copyright Act, conferring upon DBT or DBT's Licensor the copyright thereto. The Software Assets further represent and comprise information, algorithms and processes which afford DBT and DBT's Licensor a competitive advantage by not being generally known or available, and which constitute trade secrets belonging to DBT or DBT's Licensor. Licensee agrees to take all necessary steps to protect the proprietary interests subsisting in the Software Assets, provided that Licensee's obligations to so protect the Software Assets shall terminate to the extent any portion thereof becomes part of the public domain other than by a breach by Licensee of its obligations hereunder to prevent the same.

9.3   Without in any way limiting Licensee's obligations under Section 9.2, Licensee agrees that it shall (a) not disclose the Software Assets or any portion thereof to anyone except to its employees to whom disclosure is necessary to use the Software Assets for the purpose permitted by this Agreement, provided such employees are obligated to Licensee in writing to protect third party software in a manner

Acceptance Initials of Licensee: _____        Acceptance Initials of DBT: _____



4

comparable to the provisions hereof; (b) only copy the Software Assets as provided in Section 9.4 below; (c) not attempt or permit others to attempt to disassemble, decompile or otherwise generate any Program source code or defeat any measures employed by DBT to prohibit copying and/or accessing Program source code; (d) not remove the Software Assets from the Installation Site; and (e) notify DBT immediately if Licensee has reason to believe any component of the Software Assets has been lost, stolen, improperly copied, disclosed or accessed Licensee and assist DBT in investigating and resolving all such misuses of Software Assets.

9.4    Licensee may copy the Programs in a reasonable number solely for archive and back-up purposes, provided that Licensee shall affix to all such copies all copyright, trade secret, trademark and other proprietary legends as appear in or on the Software Assets and on the Program media furnished to Licensee hereunder, or as otherwise directed by DBT. The Software Assets may not be otherwise copied, in whole or in part, without the prior written consent of DBT, provided, however, that Licensee may license additional copies of the Programs and/or Documentation by paying DBT an Additional Copy Fee computed according to DBT's then current rates.

9.5    Licensee understands that a breach by it of its obligations under this Section 9 will result in irreparable injury to DBT and DBT's Licensor, and therefore consents to the entry of an injunction by any court of competent jurisdiction prohibiting such practices as are prohibited under this Agreement upon a showing by DBT or DBT's Licensor of a reasonable belief that the Software Assets disclosed to Licensee hereunder are being used, disclosed, or copied contrary to the terms of this Agreement. Licensee shall defend and indemnify DBT against all loss, liabilities, actions and expenses (including, without limitation, reasonable attorneys' fees) incurred by DBT from a breach by Licensee of its obligations under this Section 9 or Licensee's negligent or willful misuse of the Software Assets, or Licensee's use of the Software Assets in violation of any applicable governmental law, rule or regulation.

10.    Termination, Remedies and Survival of Obligations and Remedies

10.1    If Licensee (a) violates any of the covenants set forth in Section 9 above; (b) fails to make any payment due hereunder or materially breaches any other provision of this Agreement, and in either case fails to cure the same within thirty (30) days of its receipt of written notice thereof from DBT; (c) ceases doing business as a going concern, or (d) files or has filed against it any petition under the Federal Bankruptcy Act or any state insolvency law, DBT may declare this Agreement to be in default and the licenses granted hereunder to be terminated. Subject to Licensee's above stated rights to notice of and an opportunity to cure certain breaches of this Agreement, the rights granted to DBT under this Agreement shall be cumulative and in addition to all other rights and remedies available to DBT at law or in equity.

10.2    Immediately upon termination of any License of Software Assets granted hereunder for any reason, Licensee shall immediately cease using Software Assets and, at DBT's option and direction, either destroy or return to DBT all physical embodiments thereof. Licensee's obligations under Section 9 shall survive termination of any license or this Agreement. Further, termination of any license or this Agreement shall not relieve Licensee of its payment obligations hereunder.

11.    General Provision

11.1    Neither this Agreement nor Licensee's rights or duties hereunder may be assigned or delegated in part or in whole by Licensee without DBT's prior written consent, and any attempted such assignment shall be void. In all other respects, this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

11.2    All notices relating hereto shall be sent certified mail or registered mail, return receipt requested with postage prepaid, in the U.S. mails, to DBT or Licensee at it respective address above shown or at any later address of which notice is given, and shall become effective when actually received.

11.3    Licensee acknowledges and agrees that DBT shall have the right to use Licensee's name in connection with the marketing and promotion of the Software Assets provided that Licensee shall have the right to review all materials referencing Licensee prior to publication of the same. Each of the parties agree to maintain in confidence the provision of this Agreement and the Schedules hereto.

11.4    If any provision hereof or any remedy herein provided for shall be invalid under any applicable law, such provision shall be deemed omitted but the remaining provisions hereof shall be given effect in accordance with the manifest intent hereof.

11.5    This Agreement and Schedules executed hereunder constitute the entire agreement between the parties, and supersede all prior representations and agreements, written or oral, with respect to the subject matter hereof.

11.6    This Agreement shall be governed in all respects by the laws, exclusive of the choice of law rules, of the state of Illinois.

IN WITNESS WHEREOF, the parties have caused this agreement to be executed by their duly authorized officers on the date first above written.

DATABASE TECHNOLOGY CORPORATION _____ TITLE _President_

FMC CORPORATION _____ TITLE _DIRECTOR_



AMENDMENTS
TO LICENSE AGREEMENT
BETWEEN

FMC CORPORATION
AND
DATABASE TECHNOLOGY CORPORATION

1. Change "a Texas Corporation having its principal offices at 1460 Roundtable Dr. Dallas, TX " to read "a Delaware Corporation having its principal offices at 200 E. Randolph Dr., Chicago, ILL 60601"

2. Section 3.1: (b) At the end of the paragraph, add the following: "'Licensee' shall include parents, subsidiaries, successors, assigns, and any business entity subject to an acquisition or divestiture agreement with FMC."

3. Section 3.2: At the end of this section add the following: "Licensee may relocate use of the software to any emergency backup CPU at any time required by Licensee."

4. Section 3.4: Delete

5. Section 6.1, Sentence 3: Delete this sentence and replace with the following: "As to long term licenses, Licensee may, at its option, renew the maintenance agreement for successive periods of one year.  DBT shall provide Licensee with written notice of maintenance period termination sixty (60) days prior to expiration of the term.  Licensee will provide DBT with 30 days notification if it chooses to cancel maintenance.

6. Section 6.4, clause (i) delete the words "or in accordance with sound data processing standards"

7. Section 6.4, clause (ii): Delete

8. Section 6.4, clause (iii): Delete

9. Section 6.4, clause (iv): Renumber as (ii)

10. Section 6.8, sentence #1: following "after DBT receives written notification thereof," delete the rest of the paragraph and replace with the following: "or if DBT discontinues maintenance coverage, Licensee may  (i) cancel maintenance coverage and receive a refund of any prepaid maintenance fee applicable to the cancelled coverage and/or (ii) cancel the License Agreement and receive a pro rata refund of license fees and recover costs of procuring necessary maintenance services."
    Licensor agrees to transfer title to one copy of a source code version of Product(s) to Licensee for deposit in trust with _____



2887L/1

as trustee, or to transfer title directly to such trustee. The trust agreement will provide that the trustee will deliver the source code to Licensee upon receipt of notice from Licensee that any of the following has occurred: (i) the filing of bankruptcy proceedings by or against Licensor; (ii) Licensor having an assignment for the benefit of creditors or any other formal creditor's remedy under state law; (iii) termination of Licensor's business; (iv) the failure of Licensor to continue the sale or maintenance of Product(s); (v) the failure of Licensor to correct any substantial defects in Licensee's software after reasonable notice and an opportunity to do so has been given.

11. Section 7.3: Sentence one and two. Change "fifteen (15) days" to "forty-five (45) days".

12. Section 7.5: Change "fifteen (15) days" to "forty-five (45) days"

13. Section 7.6: change "1-1/2% per month" to ".75% per month"

14. Section 7.9: Add new section "7.9 Licensor agrees to allow Licensee, at Licensee's option, to convert one (1) purchased License to a rental/lease License. If Licensee exercises this option Licensor will refund to Licensee monies in the amount representing the difference between the rental payments which would have been paid for the term used and the purchase price originally paid.

15. Section 8.3, sentence #1: Delete the words "set forth in paragraphs (i) through (iv)" and replace with "set forth in paragraphs (i) and (ii)"

16. Section 8.4, sentence #5: Change "three (3) year period" to "20 year period"

17. Section 9.2, sentence #3: Delete and replace with the following: Licensee acknowledges that the software Product(s) constitute trade secrets and proprietary information of the Licensor and that the software Product(s) are and remain the property of the Licensor both before and after termination of this Agreement. Licensee shall treat the licensed Product(s) with the same degree of care and confidentiality which Licensee provides to similar information belonging to Licensee which Licensee does not wish disclosed to the public. This provision shall not apply to licensed software, or any portion thereof, which is (i) publicly known or becomes publicly known through no unauthorized act of Licensee, (ii) rightfully received from a third party, (iii) already known to Licensee without an obligation of confidentiality, (iv) disclosed without similar restrictions by Licensor to a third party, (v) approved by Licensor for disclosure, or (vi) required to be disclosed pursuant to a requirement of a governmental agency or law.

18. Section 9.3: Delete subsection (D)



2887L/2

19. Section 9.4: End first sentence after "backup purposes."

20. Section 9.5: Delete the first sentence.

21. Section 10.1: Delete clause (d)

22. Section 11.1:        Delete this section and replace with the following: "Licensee reserves the right to assign this agreement, in whole or in part, to any successor of any of its businesses."

23. Section 11.3: Delete

24.    Licensee will remit payment in full to DBT on or before December 15, 1987.

Accepted By:

FMC Corporation

By _____

Title _DIRECTOR_____

Date _12/8/87_____

Database Technology Corporation

By _____

Title _President_____

Date _87/12/03_____



2887L/3

JS 44
(Rev. 12/96)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

The DBT Group, Inc., an
Illinois corporation

JUDGE KOCORAS

**DEFENDANTS**

FMC Corporation, a Delaware corporatio
and Electronic Data System Corporation
a Delaware corporation

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

01C 2769

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William M. Stevens
McBride Baker & Coles
500 W. Madison Street, 40th Floor
Chicago, IL 60661   (312) 715-5700

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE NOLAN

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
       Plaintiff

☒ 3 Federal Question
       (U.S. Government Not a Party)

☐ 2 U.S. Government
       Defendant

☐ 4 Diversity
       (Indicate Citizenship of Parties
       in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
       Proceeding

☐ 2 Removed from
       State Court

☐ 3 Remanded from
       Appellate Court

☐ 4 Reinstated or
       Reopened

☐ 5 Transferred from
       another district
       (specify)

☐ 6 Multidistrict
       Litigation

Appeal to District
Judge from
☐ 7 Magistrate
       Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 385 Property Damage Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 535 Death Penalty | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

17 U.S.C. Section 101 et seq.

**VII. REQUESTED IN
       COMPLAINT**

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $150,000
per violation

CHECK YES only if demanded in complaint
JURY DEMAND:   ☐ YES   ☒ NO

**VIII.**   This case   ☒ is not a refiling of a previously dismissed action.
                          ☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE   4/18/01

SIGNATURE OF ATTORNEY OF RECORD
William M. Stevens

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**
APR 1 9 2001

JUDGE KOCORAS

# 01C 2769

In the Matter of

The DBT Group, Inc.,
          Plaintiff,

    v.

Case Number:

MAGISTRATE JUDGE NOLAN

FMC Corporation and Electronic
Data System Corporation, Defendants.

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

The DBT Group, Inc.

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME<br>William M. Stevens | NAME<br>Micah E. Marcus |
| FIRM<br>McBride Baker & Coles | FIRM<br>McBride Baker & Coles |
| STREET ADDRESS<br>500 West Madison Street, 40th FL. | STREET ADDRESS<br>500 West Madison Street, 40th FL. |
| CITY/STATE/ZIP<br>Chicago, Illinois 60661-2511 | CITY/STATE/ZIP<br>Chicago, Illinois 60661-2511 |
| TELEPHONE NUMBER<br>(312) 715-5700 | TELEPHONE NUMBER<br>(312) 715-5700 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>02731444 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6257569 |
| MEMBER OF TRIAL BAR?   YES ☒   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☒ |
| TRIAL ATTORNEY?   YES ☒   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☒ |
| | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME<br>Elayna T. Pham | NAME |
| FIRM<br>McBride Baker & Coles | FIRM |
| STREET ADDRESS<br>500 West Madison Street, 40th FL. | STREET ADDRESS |
| CITY/STATE/ZIP<br>Chicago, Illinois 60661-2511 | CITY/STATE/ZIP |
| TELEPHONE NUMBER<br>(312) 715-5700 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6270430 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☒ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**