Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2769 | **DATE** | 9/18/2001 |
| **CASE TITLE** | The DBT Group vs. FMC Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** EDS's motion (Doc 15-1) to dismiss Count II of the amended complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | SEP 19 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 01 SEP 18 PM 4:35 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE DBT GROUP, INC., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FMC CORPORATION, a corporation, and ELECTRONIC DATA SYSTEMS CORPORATION, a corporation,<br><br>Defendants. | 01 C 2769 |

DOCKETED
SEP 1 9 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Defendant Electronic Data System's motion to dismiss Count II of Plaintiff DBT's complaint. For the reasons that follow, we deny the motion.

## BACKGROUND

Plaintiff DBT Group, Inc., ("DBT") develops software for large, mainframe computers. In 1987, DBT's predecessor corporation, Database Technology Corporation ("Database") licensed two of its software products, COMPRESS for DB2 and COMPRESS for IMS ("the Software"), to Defendant FMC ("FMC"). The licensing agreement contained strict provisions regarding use of the Software and

required prior consent from Database before the Software could be distributed to any third parties.

In 1989, DBT was formed by the sole shareholder of Database, and all copyrights in and licenses to Database software were transferred to DBT at that time. Around 1995, FMC outsourced its data processing to SHL Systemhouse Corporation ("SHL"). FMC requested and received consent from DBT to distribute the Software to SHL as part of the outsourcing arrangement. In 1999, Defendant Electronic Data Systems ("EDS") bought SHL's assets, and FMC distributed the Software to EDS, but this time they did not request or obtain prior consent from DBT. In early 2000, DBT sent a cease-and-desist letter to EDS, demanding that EDS stop any further use or distribution of the Software. According to DBT, EDS has not complied with the demands in the letter.

In December 2000 and January 2001, DBT registered its copyrights in the Software. Shortly thereafter, they commenced this suit for infringement against both FMC and EDS. EDS now moves to dismiss Count II of the complaint, the count that alleges their liability.

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. Triad Associates, Inc. v. Chicago

Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must construe the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be accepted as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).

The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion, the court may not look outside the allegations in the pleadings, but documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. See Fed.R.Civ.P. 10(c); Venture Associates Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). With these principles in mind, we turn to EDS's motion.

## DISCUSSION

Although copyright protection attaches to a work upon its creation, a party cannot sue for infringement of the copyright pursuant to 17 U.S.C. § 501 until the

copyright is registered with the Copyright Office. 17 U.S.C. § 411. In addition, only the owner of the copyright has standing to bring a suit for infringement of a registered copyright. 17 U.S.C. § 501(b).

Based on these requirements, EDS advances two theories as to why Count II does not state a cognizable claim. First, they contend that the material DBT registered in December 2000 and January 2001 is not the material that EDS received from FMC. Second, they assert that even if the allegedly infringed software is what was registered, DBT does not own the copyright that they claim was infringed. Without that ownership, they argue, DBT has no standing to bring this infringement action.

## A. Registration

According to EDS, the registration application upon which DBT rests its claims does not include the software EDS used. They point to three aspects of the registration where they believe the application and the complaint differ: whether the Software was a derivative work, whether it was a work made for hire, and whether it was unpublished.

### 1. Derivative Works

In order to be copyrightable, a work need not be completely original. 17 U.S.C. § 103. It can be based on one or more preexisting works, but such works are designated derivative works and protection extends only to the portions of the work that

were not present in the original. 17 U.S.C. §§ 101, 102; <u>Saturday Evening Post Co. v. Rumbleseat Press, Inc.</u>, 816 F.2d 1191, 1193 (7th Cir. 1987). If a copyright owner seeks to register a derivative work, the works upon which it is based must be noted on the registration form. U.S. Copyright Office Instructions for Application Form TX, at 2. The Copyright Office form for registering computer programs asks for such information in Space 6(a). DBT's complaint states that the Software has had many versions, dating back to 1979, none of which were listed in Space 6(a) of their registration forms. Because of this omission, EDS insists that the material that DBT registered must have been a completely original work and thus could not be the Software that it used. However, the instructions for copyright registration of computer programs state that only published, public domain, or registered preexisting works need be included in Space 6(a). U.S. Copyright Office Circular 61, at p. 2. DBT cites the instructions as the reason why the previous versions of the Software were not listed. Assuming that DBT should have entered information regarding the previous versions of the Software, the mistake appears to have been innocently made, based on a good-faith effort to comply with the applicable Copyright Office instructions. Omissions or misrepresentations in registration materials invalidate a copyright only if they are intentional or purposeful. <u>Original Appalachian Artworks, Inc., v. Toy Loft, Inc.</u>, 684 F.2d 821, 828 (11th Cir. 1982). In <u>Original Appalachian Artworks</u>, the Eleventh

Circuit considered whether the omission of information regarding works on which toy dolls were based invalidated a copyright application. Id. Because the registrants had omitted the information after the Copyright Office had instructed them to do so, the court held that the registration was enforceable despite the omission. Id. In this case, the omission of information regarding previous versions seems to have been made based on the statement in Circular 61 that only published preexisting works needed to be included in Space 6(a). As such, we reject EDS's assertion that the application was fatally incomplete with regard to inclusion of previous versions.

In a similar vein, EDS asserts that the registration is invalid because it gives the Software's date of creation as 2000. The complaint, by contrast, states that the Software went through multiple revisions from 1979 to 2000. Although EDS's framing of the issue is consistent with the typical meaning of the word creation, a software program is not created all at once. It evolves through multiple versions and changes, each one complete in itself. Admittedly, Circular 61 cautions that obtaining a separate registration for each software version is the best way to ensure the full benefits of registration. U.S. Copyright Office Circular 61, at 3. However, the same passage refers only to registration of "published" versions and states that a discrepancy between the dates listed in the deposited copies of the code and the dates listed on the application will only slow down processing of the application, not necessarily

invalidate it. Id. Because DBT's software is not published, their assumption that they need only list the most recent creation date was reasonable. We therefore disagree with EDS that the Software could not have been developed from 1979 to 2000 and been "created" for registration purposes in 2000.

2. Works Made for Hire

Works made for hire are the only kind of copyrightable work for which the author of a piece is not also its creator. 17 U.S.C. § 201(b). Rather, the party for whom the work was prepared, usually the creator's employer, is the original author of the work with all the consequent rights of authorship. Id. In the computer industry, the concept of works for hire is particularly important because software is usually created by programmers working for the benefit of their employer.

EDS insists that the software it used could not have been a work made for hire and therefore could not be the material that was registered. The main thrust of their argument is that DBT did not exist until 1989 so they could not have hired someone to create the Software in 1979. This argument is wholly without merit. The 2000 version of the Software was the subject of the registration application, and a corporation formed in 1989 could certainly hire a programmer to create software in 2000. Even if we were to look back in time, EDS ignores the basic rule that corporations, such as DBT or its predecessor Database (which did exist in 1979), can only act through their

agents. <u>United States v. Lov-It Creamery</u>, 895 F.2d 410, 411-412 (7th Cir. 1990). As such, works they author can only be works made for hire. Nothing that EDS has provided, therefore, supports their contention that the software they used could not have been a work for hire.

3. Publication of Works

EDS also raises the issue of whether the software was published. The licensing agreement, the submitted program code, the application, and the amended complaint all indicate that the software was unpublished. EDS, however, focuses on the language of the original complaint, which stated that the software had been "published and licensed...in interstate commerce." Compl., para. 8. To be published, a work must be distributed "to the public." 17 U.S.C. §101. Although the Copyright Act does not define that phrase, the Congressional report for the Act as well as the applicable Copyright Office documents state that "the public" are "persons under no explicit or implicit restrictions with respect to the disclosure" of the distributed material. Rep. of Comm. on Judiciary, 94th Cong., 2d Sess, Report No. 94-1476, at 138; U.S. Copyright Office Circular 1, at 4. As discussed earlier, if the software was indeed published, the disclosure requirements on the application form would change significantly.

EDS claims that the statement in the original verified complaint is an admission that is binding on DBT. They cite Illinois authority that would support such a

statement, but they do not refer us to, nor can we find, any federal authority that would mandate that conclusion. It goes without saying that in this action, which is based on the federal copyright act, we need follow only federal rules of procedure. Several Seventh Circuit cases state that under Rule 15, an amended pleading supersedes and replaces prior pleadings. See, e.g., <u>Carver v. Condie</u>, 169 F.3d 469, 472 (7th Cir. 1999); <u>Kelley v. Crosfield Catalysts</u>, 135 F.3d 1202, 1204 (7th Cir. 1998); <u>Duda v. Bd. of Educ. of Franklin Park Publ. Sch. Dist. No. 84</u>, 133 F.3d 1054, 1056-1057 (7th Cir. 1998). Therefore, the allegations contained in DBT's original complaint are no longer operative.

In any event, even the Illinois rules do not hold parties to contradictory statements in prior verified pleadings if the earlier statement is the product of mistake or inadvertence. <u>See</u> <u>Michael v. First Chicago Corp.</u>, 487 N.E.2d 403, 406-407 (Ill. App. Ct. 1985). Based on our review of the actual conduct of DBT in distributing its software, we conclude that the statement in the original pleading was a product of mistake.

First of all, the licensing agreement between DBT and FMC stated that the work was not published. Am. Compl., Exh. 3, para. 9.2. Second, the applicable notices within the actual code of the Software state that the programs are unpublished. Reply, Exh. 1, at 2-26. Third, the applications do not list a publication date for the Software. Am. Compl. Exhs. 1-2. These statements standing alone would be insufficient to

establish that Software was unpublished if DBT had acted in a contrary fashion. However, the terms of the license agreement and the fact that FMC sought and received consent to distribute the software to SHL refute the inference that DBT allowed distribution to persons who were not explicitly or implicitly restricted with respect to the use and disclosure of the Software.

EDS focuses on the words "rental" and "lease" that the licensing agreement uses to describe the relationship between DBT and FMC to bolster their claim of publication. Am. Compl., Exh. 3, para. 7.2. Because those words appear in the definition of "publication" in 17 U.S.C. § 101, their argument goes, the licensing agreement by its own terms demonstrates publication. EDS has latched onto the wrong words in the statute. The recipients of the information, not the means of distribution, distinguish public from nonpublic dissemination. Information that is distributed to parties who are restricted in their use of the information is unpublished whether it is sold, leased, or given. Everything that DBT has done in this case points to the conclusion that their software was unpublished, and we therefore conclude that the allegations of paragraph 8 of the original complaint must have been the product of mistake or inadvertence.

Accordingly, taking the allegations of the complaint in a light most favorable to DBT, we conclude that EDS has not shown that DBT's complaint is fundamentally

inconsistent with its registration materials. Thus we cannot dismiss Count II on this basis.

### B. Ownership

EDS further argues that even if we conclude the registration was sufficient, we must still dismiss Count II of the complaint because DBT did not own the copyright of the software that they allege was infringed. It is certainly settled law that only the owner of a copyright may bring suit for its infringement. Feist Publications, Inc., v. Rural Telephone Service, Co., Inc., 499 U.S. 340, 361 (1991).

One need not be the author of a copyright to be its owner, but owners must trace their ownership interest back to the author, who is the original owner of the copyright. 17 U.S.C. § 201(a); U.S. Copyright Office Instructions for Application Form TX, at 2. Except in the case of a work made for hire, discussed above, the creator of a work is its author. According to 17 U.S.C. § 201(d), any or all of the exclusive rights that make up a copyright may be transferred to someone other than the author. EDS's main argument seems to be that because DBT was not an author, or at least not the sole author, of the Software, they cannot own the copyright.

EDS confuses two concepts that are central to copyright law: authorship and ownership. The only rights that an author of a copyrighted work has that cannot be transferred are rights of attribution and integrity, or so-called "moral rights," in works of visual art. 17 U.S.C. § 106A. Those types of rights are clearly not at issue in this

case, and any and all of the other exclusive rights that make up a copyright are transferable.

DBT's complaint states that the copyrights in and licenses of the Software were transferred to DBT in 1989, and EDS has supplied nothing that would lead us to believe, let alone determine as a matter of law, that those transfers did not properly vest ownership of the applicable copyrights in DBT. Moreover, DBT did not seek to register previous versions of the Software. We have no indication that they were transferred the rights to the 2000 version. Based on the same instructions that are discussed above, it is reasonable that DBT would not explain the particulars of transfers relating to versions that were not the subject of the application.

Thus, reading the allegations of the complaint in the light most favorable to DBT, we conclude that they have adequately alleged ownership of the copyright they say was infringed and may therefore bring this suit under 17 U.S.C. § 501(b).

## CONCLUSION

For the foregoing reasons, EDS's motion to dismiss Count II of the amended complaint is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: September 18, 2001